UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CRYSTAL CARIEGA, individually and as mother and natural guardian of SEBASTIAN CARIEGA, SAMIRA CARIEGA, minors,<br><br>Plaintiffs,<br>v.<br>CITY OF RENO, *et al.*,<br><br>Defendants. | Case No. 3:16-cv-00562-MMD-WGC<br><br>ORDER |

## I.  SUMMARY

This action concerns alleged deprivations of Plaintiff Crystal Cariega's ("Cariega") constitutional rights resulting from her arrest for an outstanding warrant that she contends was unlawful. Pending before this Court are two motions: (1) Defendants City of Reno ("the City"), Reno Municipal Court ("RMC"), and Mauricio Rojas' ("collectively Defendants")[1] Rule 12(b)(6) Motion to Dismiss the Third Amended Complaint ("Defendants' Motion") (ECF No. 37); and (2) Plaintiffs' Motion for Partial Summary Judgment as to Liability under 42 U.S.C. § 1983 ("Plaintiffs' Motion") (ECF No. 40). The parties filed respective responses (ECF Nos. 38, 44) and replies (ECF Nos. 39, 46).

---

[1] An additional Defendant, Dale Hailstone, was added to this action on June 1, 2017 (ECF No. 30); however, Hailstone passed away on March 25, 2016 (ECF No. 44-2 at 2), and Plaintiffs never sought leave to amend their Third Amended Complaint to substitute the proper party. Accordingly, the Court will dismiss claims against Hailstone. Fed. R. Civ. P. 25(a)(1) (providing that the action against the decedent must be dismissed if a motion to substitute the proper party is not made within ninety (90) days after service of a statement noting the death).

For the reasons discussed herein, Defendants' Motion is granted and Plaintiffs' Motion is denied as moot. Because Cariega's 42 U.S.C. § 1983 claim is dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and remands this action to state court.

## II. BACKGROUND

Plaintiffs Crystal Cariega and her two children, Sebastian and Samira Cariega ("the Cariega Children"), commenced this action on July 22, 2016, in the Second Judicial District Court of the State of Nevada in and for the County of Washoe, against the City and Lynette Jones. (ECF No. 1-1.) While this action was still pending in state court, Plaintiffs filed their First Amended Complaint ("FAC") on August 11, 2016. (ECF No. 1-2.) On September 28, 2016, the City removed the action[2] based on federal question jurisdiction, 28 U.S.C. § 1331. (ECF No. 1.) The City moved to dismiss the FAC on October 12, 2016 (ECF No. 7), and on May 8, 2017, this Court entered an order granting the City's motion but permitting Plaintiffs leave to amend the FAC (ECF No. 23).[3] On May 31, 2017, Plaintiffs filed their Second Amended Complaint, removing Jones as a defendant and adding RMC, Rojas, and Dale Hallstone as defendants. (ECF No. 24.) On June 1, 2017, Plaintiffs filed a Third Amended Complaint ("TAC") in order to correct the misspelling of Dale Hallstone's name to Dale Hailstone. (ECF No. 30.) The following facts are taken from the TAC unless otherwise indicated.

Cariega is a Native American woman[4] and resident of Reno. On or about September 9, 2013, Cariega was issued a traffic citation for speeding pursuant to NRS § 484B.600. On or about October 14, 2013, RMC issued an arrest warrant for Cariega based on her failure to appear. On or about December 2, 2013, Cariega filed a motion to dismiss the arrest warrant. Subsequently on or about December 3, RMC quashed the

---

[2]The City was not served until September 22, 2016, and at the time of removal was the only defendant that had been served. *See* 28 U.S.C. § 1446(b)(1) & (2)(A).

[3]The prior order gave Plaintiffs leave to amend the section 1983 claim.

[4]Crystal Cariega is federally registered with the Quileute tribe and is affiliated with her father's federally registered Paiute Tribe. (ECF No. 30 at ¶ 15.)

2

arrest warrant and ordered Cariega to perform 24 hours of community service in lieu of payment of a fine. RMC required that she complete her community service by February 21, 2014. On or about January 27, 2014, Cariega paid the fine and was allegedly told by the on-duty RMC clerk that RMC followed a "policy, custom, pattern and practice of taking payments from defendants in lieu of performing community service." (ECF No. 30 at ¶ 20.) Moreover, the RMC called "upstairs" and then informed Cariega that someone "upstairs" had approved her payment of the fine in lieu of the "community service order." (*Id.* at ¶ 21.) She paid $195 to RMC.

On or about February 27, 2014, Hailstone "illegally verified . . . the arrest warrant for and in [*sic*] behalf of another clerk, Mr. Rojas." (ECF No. 30 at ¶ 23.) According to Plaintiffs, in his declaration in support of the arrest warrant Hailstone claimed that Rojas had reviewed Cariega's file and had determined that an arrest warrant should issue against Cariega.

On or about July 26, 2014, at approximately 9:30pm Cariega was driving home from work with her children and a co-worker, Lucelly Fiero, on U.S. 395 North near the North McCarran exit when a local police officer stopped her. After the officer performed a warrant and arrest search, the officer advised Cariega that she had an outstanding arrest warrant for failure to pay a prior traffic citation. Cariega was handcuffed and placed in the back seat of the officer's car, to which the Cariega Children were witnesses. The Cariega Children were then placed into the custody of Cariega's co-worker, Fiero.

Cariega was taken to Washoe County Detention Facility ("WCDF"), where her personal belongings were confiscated, and where she was subjected to a strip search and forced to wear WCDF attire. While at WCDF, jail staff allegedly accused Cariega of being a "drunk Indian," and despite passing a breathalyzer test—which showed she had no alcohol in her system—she was placed in the "inebriate [*sic*] jail population" and received repeated sexual advances from other WCDF detainees. (ECF No. 30 at ¶ 39.) Cariega spent the night at WCDF and was released the following morning after she paid bail. Upon returning to court, Cariega demonstrated that she had paid the traffic citation

3

six months prior to her arrest; yet it took several more weeks for her to receive reimbursement of a portion of her bail. The wrongful arrest then appeared in a background check months later. Her employer was made aware of the situation, and Cariega was forced to take several meetings with her supervisor to explain why the arrest was unlawful.

Plaintiffs assert a claim for violation of Cariega's Fourth, Fifth, and Fourteenth Amendment rights brought pursuant to 42 U.S.C. § 1983, as well as seven state law claims. Defendants' Motion seek dismissal only of the section 1983 claim.

### III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not

show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

The Court takes judicial notice of three documents: Cariega's second arrest warrant (ECF No. 38-1); the Reno City Charter (ECF No. 37-1); and Chapter 2.16 of the Reno Municipal Code (ECF No. 37-2). This Court considers the second arrest warrant because it is incorporated by reference in the TAC and there is no dispute about its authenticity. *See Coto Settlement*, 593 F.3d at 1038. This Court takes notice of the Reno City Charter and Chapter 2.16 of the Reno Municipal Code because they are matters of public record.

**IV.    DISCUSSION**

Defendants argue that because Plaintiff Cariega's section 1983 claim is based on "the alleged failure of the [RMC] clerks to process traffic citation payments and quash related arrest warrants" that is based on a "policy, custom, pattern and practice" of RMC and that is carried out within the scope of their employment for RMC and the City (ECF No. 37 at 7-8 (internal quotation marks omitted)), the TAC contains insufficient facts to state a claim under section 1983 and are mere legal conclusions. Plaintiffs respond, conceding that the City should be dismissed under the section 1983 claim (ECF No. 38 at 3 n.1), that the RMC judge's final signing off of arrest warrants provides for municipal liability, and that the arrest warrant (ECF No. 38-1) demonstrates a "well-settled and established practice of the RMC [ ] for a clerk to review a warrant, for another without personal knowledge to verify and for a judge to then sign the warrant." (ECF No. 38 at 3-4.) The Court agrees with Defendants and finds that the facts presented do not permit the Court to infer the existence of a policy, custom, pattern or practice whereby RMC clerks,

including Rojas, do not process traffic citation payments, verify unlawful warrants, or fail to quash arrest warrants in a timely manner, or where they do any of these things on the basis of an individual being a minority.

### A. Rojas

According to the TAC and the arrest warrant, Rojas merely reviewed/audited Cariega's court file and recommended that an arrest warrant issue; there is no allegation that Rojas provided a written declaration in support of the arrest warrant or signed anything. (ECF No. 30 at ¶ 23; ECF No. 38-1 at 2.) Yet the TAC claims that Rojas acted, either purposefully or with conscious indifference, pursuant to an RMC "policy, custom, pattern and practice" of accepting money as payment for a fine and then not processing the money and quashing the underlying warrant in a timely and proper manner, both generally and based upon Cariega being a minority, and of utilizing illegal declarations/verifications as the basis for arrest warrants. (ECF No. 30 at ¶ 26-30.) The Court agrees with Defendants that these claims are mere legal conclusions and that there are no factual allegations in the TAC to support such claims. (ECF No. 37 at 11-12.) There are no allegations that Rojas accepted and processed Cariega's payment, that he knew she had paid off her traffic citation, that Rojas had the authority to quash arrest warrants, that Rojas knew Cariega was a Native American or other minority, or that Rojas himself "utilized" an "illegal" declaration or verification as the basis for Cariega's second arrest warrant. Moreover, there is no support in the TAC for an official municipal policy or long-standing custom that Rojas purportedly followed when reviewing Cariega's court file and recommending that an arrest warrant issue. *See* discussion *supra* Sec. III(B)(iii).

For these reasons, the section 1983 claim against Rojas is dismissed.

### B. RMC

A municipality cannot be held liable under 42 U.S.C. § 1983 based on a theory of respondeat superior. *See Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 694 (1978). Municipal liability may exist where the municipality itself causes the constitutional violation through "execution of a government's policy of custom, whether

made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* To establish liability under *Monell*, Cariega must demonstrate that she was deprived of a constitutional right, that the County had a policy that amounted to deliberate indifference to Plaintiff's right, and that the County's policy was the moving force behind the constitutional violation. *See Dougherty v. City of Corvina*, 654 F.3d 892, 900 (9th Cir. 2011). For instance, a plaintiff may be able to establish municipal liability if she can show that the constitutional violation that harmed her was committed "pursuant to an expressly adopted official policy, a long-standing custom or practice, or the decision of a final policymaker." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013) (internal quotation marks omitted). The municipal "policy or custom" requirement applies irrespective of whether the remedy sought is money damages or prospective relief. *Los Angeles City, Cal. v. Humphries*, 562 U.S. 29, 34 (2010).

As to RMC,[5] Defendants address only one policy, custom, pattern or practice—"accepting money as payment for a traffic fine and then not processing the money and quashing the underlying warrant" (ECF No. 37 at 11)—and argue this statement "is merely a legal conclusion without [Plaintiffs] pointing to a specific decision of lawmakers, specific acts of policymaking officials, or factual examples of practices so persistent as to have the force of law" in the TAC. (*Id.*) However, Defendants also make mention of the other purported policies in the TAC, contending that the statements of "policy, custom, practice of pattern" are merely legal conclusions and are insufficient to establish a municipal policy under the pleadings of *Iqbal* and *Twombly*. (ECF No. 37 at 7-8.) The Court agrees with Defendants.

Plaintiffs identify three alleged policies, customs, patterns or practices of RMC in the TAC: (1) accepting money as payment for a fine, but not processing the payment or

---

[5]RMC is the independent, judicial branch of the City of Reno's government. *See* Reno City Charter, Articles II-IV (establishing a tripartite system of government). Pursuant to NRS § 5.060, RMC itself and RMC judges have jurisdiction to "issue all legal process, writs, and warrants necessary and proper to the complete exercise of their powers." Moreover, RMC judges have the authority to appoint and remove those employees who are appointed to perform the work of RMC. Reno Municipal Code § 2.16.025(a).

quashing related or underlying warrants in a timely and proper manner (*see* ECF No. 30 at ¶¶ 26, 29); (2) doing (1) on the basis that the individual is a Native American or another minority (*see id.* at ¶¶ 27-28); and (3) RMC clerks' signing pursuant to NRS § 53.045 an arrest warrant, recommending its issuance to an RMC judge who then signs it, without the clerk having personally reviewed[6] the individual's particular case file (*see id.* at ¶¶ 22-25).

Of these three "policies, customs, patterns or practices," there is no factual support in the TAC for (1) or for (2)—the Court thereby agrees with Defendants. As to (1), according to the TAC, Cariega's original arrest warrant was quashed when RMC ordered that she complete 24 hours of community service by February 21, 2014. Assuming the facts as taken from the TAC and judicially noticed exhibits to be true, the Court may not infer that the processing of Cariega's payment did not occur. Rather, the Court is permitted to infer only that Cariega paid her citation, that an RMC clerk permitted her to pay the fee associated with the citation in lieu of completing community service, and that the recommendation for the issuance of a second arrest warrant by RMC clerks was based on contempt of court (*see* ECF No. 38-1 at 2 (citing to NRS § 22.010)).[7] As to (2), there is no contention in the TAC that Rojas, Hailstone, or anyone at RMC knew Cariega was a Native American or a minority. In fact, her arrest warrant identifies her as white. (ECF No. 38-1 at 2.)

As to (3), Plaintiffs allege that Hailstone signed the declaration in support of the arrest warrant, recommending that the RMC Judge sign and issue it, without having personally reviewed Cariega's court file. (ECF No. 30 at ¶ 24.) The arrest warrant shows that Hailstone signed an unsworn declaration in support of the warrant on February 27, 2014, declaring under penalty of perjury that:

---

[6] NRS § 53.045 says nothing about personal knowledge. The provision Plaintiff relies on in the TAC to contend that RMC clerks needed to personally review an individual's file in order to sign off on an arrest warrant is NRS § 50.025, which applies to testifying witnesses and not affiants.

[7] There is no contention in the TAC that the arrest warrant stated Cariega had failed to pay her traffic citation, nor does the arrest warrant actually reflect that.

8

> To wit, Crystal Cariega . . . failed to appear on or by 2-21-14 with proof of completing 24 hours of community service with a non-profit agency. She also has failed to provide a non-profit letter from said agency. She was granted the community service per a motion dated 12-03-13. Attempts to contact her by telephone have been unsuccessful. A [*sic*] audit of the court file by court clerk Mauricio Rojas recommends a warrant should be issued in this case. This is the 2nd warrant issued in this case.

(ECF No. 38-1 at 2.) Assuming that this declaration reflects that Hailstone did not personally review Cariega's case,[8] there is nothing in the TAC demonstrating that this action was conducted pursuant to an official municipal policy or a practice that was long standing and therefore essentially a custom at RMC.

To be an official municipal policy, the action must implement or execute "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [local governing] body's officers." *Monell*, 436 U.S. at 690-91. However, there is no allegation in the TAC that Hailstone's actions of not reviewing Cariega's court file yet signing a declaration in support of her arrest warrant were conducted pursuant to a policy statement, ordinance, regulation, or decision that was adopted and promulgated by the RMC. Similarly, in order for an informal practice to constitute a custom, it must be "so permanent and well settled" as to have the force of law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988). Here, the TAC contains no factual allegations of other incidents where arrest warrants have been based on declarations made without actual review by the declaring RMC clerk. Moreover, while an isolated decision may give rise to municipal liability under section 1983, this occurs only where the decision is made by a municipal policymaker. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Here, there is no allegation that Hailstone was such a policymaker.

Plaintiffs contend that the section 1983 claim against RMC should not be dismissed because the RMC judge, an official with final decision making authority, who

---

[8]It is possible to read the arrest warrant as merely adding that another court clerk, Rojas, also reviewed the file and recommended the issuance of the warrant (hence the use of "audit"). Thus, the first four sentences of the declaration may very well be based upon Hailstone's personal review of the court file. However, because whether Hailstone personally reviewed Cariega's court file appears to be a matter of factual dispute, the Court views the facts in the light most favorable to Plaintiffs.

signed off on Cariega's second arrest warrant relied upon the "illegal and void" declaration of Hailstone to authorize the warrant. (ECF No. 38 at 3-4.) However, the only factual allegation in the TAC concerning this is that Hailstone verified an arrest warrant for an RMC judge to sign. (ECF No. 30 at ¶ 22.) There is no contention that this RMC judge was a "municipal policymaker," *see Pembaur*, 475 U.S. at 480. Moreover, RMC judges are permitted by state law the authority to issue warrants, NRS § 5.060(1), and a municipal judge's signing off on a warrant, in and of itself, is not an act that automatically gives rise to unconstitutional deprivations. Because the TAC fails to allege that this RMC judge acted as a municipal policymaker when she signed the warrant and that she did so with knowledge that Hailstone's declaration was invalid or false, or with knowledge that Cariega was a Native American, the TAC fails to state a section 1983 claim against RMC under this theory.

Therefore, the Court dismisses the section 1983 claim against Defendants. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the remaining state law claims and remands this action to state court.

**V.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the parties' motions.

It is therefore ordered that Defendants' Motion to Dismiss the Third Amended Complaint (ECF No. 37) is granted as to Plaintiffs' claim for relief under 42 U.S.C. § 1983, which is dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state law claims.

It is further ordered that Plaintiff's Motion for Partial Summary Judgment as to Liability Under 42 U.S.C. § 1983 (ECF No. 40) is denied as moot.

///

///

It is further ordered that this action is remanded to state court.

DATED THIS 15th day of February 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE